Miller, J.
This case involves the construction to be • placed upon the several acts of the legislature, relating to the selection and the establishment of Prospect park in the city of Brooklyn, and the question to be determined is, whether either or any of said acts authorize any assessment to be made *401 of any portion of the expense of acquiring title, to and constructing said park upon lands situated in the town of Flat-bush which adjoins said city, and from the boundaries of which town a portion of the lands for said park was taken, and constituted a part of the territorial limits of the city of Brooklyn. After a careful examination I have arrived at the conclusion that the different enactments relating to the subject confer no such power and upon no sound legal, principle, were the commissioners of assessment authorized to apportion any portion of the expense of opening said park upon lands located within the town of Flatbush.
The right to apportion and collect said assessments is sought to be maintained by virtue of the provisions of the acts of 1868 and 1812, which I shall hereafter have occasion to notice, and unless it can be upheld by virtue of the provisions of these statutes, it has no authority to support it. It is nowhere expressly conferred and if such a power really and in fact exists it rests mainly upon inferences to be derived from some of the provisions of the acts in question.
Before considering the provisions of the statutes of 1868 and 1812, and with a view of a more complete apprehension of the history of legislation upon the subject and for the reason that they have somewhat of a bearing upon the construction to be put upon the acts of 1868 and 1812, it is eminently proper to advert to the laws which have previously been enacted in reference to the park in question. The first of these will be found in chapter 461, Session Laws 1859, and as its title indicates was intended “ to authorize the selection and location of certain grounds for public parks, and also for a parade ground for the city of Brooklyn.” The commissioners were authorized to select and locate such grounds in the city and adjacent streets, and required to have in view “ the present condition and future growth and wants of said city.” The expenses to be incurred under the act were to be a charge on the city and to be paid the same as other city charges. This was followed by chapter 488, Session Laws of 1860, which it is not important to examine because for *402 some reason it appears to have been regarded as defective, and was amended by chapter 340, Session Laws of 1861. This act omitted all which was contained in the act of 1860 in reference to the parade ground, located the park, declared it to be a public place, and to he taken by the city for public use and for a public park, made provision for acquiring title by means of commissioners of estimate and assessment, and vested the same in the city of Brooklyn. It also provided for an apportionment of the expenses upon “ any lands outside of the park which they [the commissioners] shall déem to be specially benefited thereby in proportion to such benefit,” and that the proceeds of assessments should be paid over to the commissioners of the sinking fund of said city to be applied to the redemption of bonds issued under the act to pay for the land taken.
It will be observed that there is nothing in this act which in express terms provide for the assessment of any portion of the expenses on lands in the town of Flatbush, although the park includes, as therein stated, a small piece of land lying in Flatbush, and it is not, I think, a legitimate inference that the phraseology “lands outside of said park,” was intended to include lands in that town any more than it might in any other town or locality which, in the judgment of the commissioners, might perhaps be benefited then or at some future period of time. It may be also remarked, in this connection, in reference to these words, which are also cited in the act of 1868 and the amendment thereto, that full effect can be given to their meaning by limiting their application to lands in the city of Brooklyn, and that any other interpretation would violate the principle which confines the costs and expenses of public improvements to the locality in which the improvement is made. Besides, the general tenor of the act is of a character which indicates that no such intention existed, and soon after the act of 1864, chapter 409, was passed, which amended the act of 1861, by limiting the apportionment of assessments on lands in the Western District of the city of Brooklyn, thus giving a construction to *403 the previous act adverse to the idea that lands in Flatbush were to be assessed.
Chapter 603 of the Laws of 1865, provides for the acquisition of another piece of land for the park and the acquirement of the title and interest of other lands not previously taken, and directs that certain provisions of the act of 1861, as amended in 1864, not incompatible with the act of 1865, shall apply. It contains no provision which is inconsistent with the previous acts in reference to the manner in which assessments should be apportioned. The next year chapter 853, Laws of 1866, was passed, which extended the boundaries of Prospect park in the city of Brooklyn, and provided for the acquisition of another portion of said park, by taking certain lands described, situated partly in the city and partly in the town of Flatbush. It limited the assessments to be made to “lands in said city especially benefited thereby.” These assessments were to be levied and collected like other taxes, and the proceeds to be paid to the commissioners of the sinking fund, to be applied to the redemption of all bonds issued and to be issued for lands taken. The title of the lands was also to be vested in the city, and the commissioners of assessment were vested with the same power and authority as were conferred on the commissioners by virtue of the acts of 1861 and 1865, and the provisions of the act of 1861 and the amendments thereto were made applicable, when not incompatible. Chapter 848, Laws of 1867, is not important unless it be for the purpose of showing the extent of authority to be exercised by the commissioners of the park.
Up to this period the report of the commissioners of awards, under the several acts of 1865 and 1866, had been duly confirmed according to law; no assessment had been made upon lands outside of the city limits, and the entire improvement had been carried out and conducted as a city matter, without reference to any property which was not within its boundaries. The lands acquired were made to constitute a part of the city; the title thereto was vested in the city in *404 fee simple, and the city authorities had the exclusive control and management of the same. It cannot be claimed, I think, that any authority existed under the act of 1866, or any other provision of law by which, prior to the passage of the act of 1868, any land lying outside of the limits of the city of Brooklyn could be lawfully assessed. Nor do I think any such authority was lawfully conferred by any subsequent legislation. Chapter 314, Session Laws of 1868, entitled “An act for the further extension of Prospect park in the city of Brooklyn,” and the amendments thereto (S. L. 1872, chap. 715), do not, in my opinion, authorize the exercise of any such power. The act of 1868 provides for the acquisition of the title to certain lands for the park, through the commissioners of estimates and assessments, and for the payment therefor by the avails of bonds to be issued, as provided; and the fourth section, after providing for an estimate of the value óf the lands and the loss and damage sustained, declares that after the report of the commissioners shall have been confirmed they shall apportion such part thereof, together with such part of the award and expenses previously reported to and confirmed by the court, for all lands heretofore taken and now constituting Prospect park, as they may deem just and proper, upon any lands “ outside of said park which they shall deem to be benefited, etc. Provision is also made for annually assessing certain portions thereof from year to year; and that the proceeds of collections shall be paid over to the commissioners of the sinking fund, to be applied to the redemption of city bonds .issued for the purchase and improvement of the park. The provisions for the apportionment of benefits is qualified and limited by the ninth section of the act, which contains a declaration that all the provisions of the acts of 1861, 1864 and 1866, as to the issue, use and sale of bonds and the redemption and payment thereof, shall be applicable, and that the duties, powers and authority of the commissioners of the park and of the commissioners of estimate and assessments and their apportionment proceedings, and the confirmation of *405 the reports which are not incompatible with the provisions of the act, shall apply to and regulate all bonds issued and all acts and proceedings, power and authority which may be had or exercised. There is no express repeal of the act of 1864, limiting the apportionment to lands in the “ western district,” nor of the act of 1866, which confines the apportionment to “ lands in said city.” Chapter 715, Session Laws of 1872, conferred no additional power on the commissioners of assessment beyond what they had enjoyed under previous acts, but limited the amount of special assessments on lands benefited, and contained some other provisions which it is not material to notice; but neither of the two last mentioned acts changed the territorial limits within which assessments were to be made. Another act was passed (chap. 711, S. L. of 1872), entitled, “An act to provide for the collection of assessments against Prospect park and the parade ground in the county of Kings,” by which the Brooklyn park commissioners were authorized and required to present annually to the joint board of common council and supervisors a statement of the amount of money assessed, or to be assessed, upon so much of the land benefited by the park “ as lies within the boundaries of the city,” and which amount was to be raised by tax for the current year, under the fourth section of the act of 1868, including the amount to be raised for the maintenance of the parks for the year ensuing, etc.; and this amount was to be levied on the land chargeable therewith, and to be paid over to the commissioners of the sinking fund, to be used for the redemption of city bonds. The act further provides for a report by the commissioners to the board of supervisors of the county, a statement of money assessed, or to be assessed, upon so much of the land benefited by said park as lies “ outside of the boundaries of said city,” which also was to be raised by tax, under the act of 1868, including the amount to be raised for the Kings county parade ground, which amounts were also to be levied upon lands chargeable therewith, and paid over to the commissioners of the sinking fund for the redemption of city bonds.
*406 It will be noticed that this act makes a clear distinction between lands assessed, or to be assessed, within the city and those outside of its boundaries, thus assuming that such a power actually existed. But, even if such a power was intended to be conferred, it was, I think, entirely unauthorized. The assessments in question were laid since title to the park had been acquired, the park located, and the improvement permanently established. Conceding that the legislature has full authority to exercise the taxing power for public purposes, except as restrained within the Constitution, not only as to the extent of taxation and the manner in which it shall be carried into effect (Matter of Van Antwerp, 56 N. Y., 261; Gordon v. Cornes, 47 id., 608), I am unable to discover any valid ground upon which the assessments made can be upheld in the case at bar. The apportionment directed to be made by the act of 1868, as amended by chapter 715 of the Laws of 1872, was not only for awards made for lands taken under that act, “ but for such as had been made under previous acts, and actually paid,” thus rendering the whole invalid. It was clearly not within the legislative authority, after awards had been actually paid for property taken, the title to which had become vested in fee in the city of Brooklyn, and that city and its inhabitants were in the full enjoyment of the benefits, advantages and privileges which the improvement conferred, to compel an adjoining town to be taxed for the payment of debts previously contracted, and for bonds already existing.
Had the respondents been originally assessed for benefit conferred under a proper law it might then be said that the assessment was for public use, and not for a subsisting debt, and such an assessment could have been enforced. But such is not this case. And those assessed are required, by the proceedings of the commissioners, to aid in the discharge of a debt previously contracted; and to contribute money which is to be paid into a sinking fund, and to be appropriated for the payment of bonds, already issued, for the location and improvement of the park. There is no principle, that I am *407 aware of, which sanctions the doctrine that it is within the taxing power of the legislature to compel one town, city, or locality to contribute to the payment of the debts of another. The government has no such authority, and this case is entirely without a precedent. If such assessments were authorized they might not be limited to adjoining towns, cities, or villages, but applied to those located at great distances from each other. Such legislation would be unjust, mischievous and oppressive, and cannot be tolerated. None of the acts in question, therefore, for the reason last stated, in any sense gave authority to the commissioners to impose the burden of the assessments made upon the town of Flatbush.
The act of 1872, chapter 711, is especially liable to objection, and if it is relied upon to sustain these assessments there is an unanswerable reason why it should fail to do so, independent of any already stated. It is void within article 3, section 16 of the Constitution of the State, which declares that “ no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in its title.” There can be no question that this is alocal bill. As we have already seen the first section of the bill relates to assessments to be made by the Brooklyn park commissioners, upon lands benefited by the opening of Prospect park within the city of Brooklyn, and the levying of the same as well as other money for the maintenance of said park. The second section relates to assessments to be made for similar objects upon lands outside of the city. It is manifest from the title of the act that assessments were to be made against the park and parade grounds, while the act made provision for assessments in its favor. The title did not express fairly and unequivocally the subject of the act, and was well calculated to mislead. The bill shows a substantial departure from the provisions of the Constitution, and cannot be upheld. (Matter of Cameron, 50 N. Y., 502.) Some other points are urged, but- as those already discussed dispose of the case it is not necessary to examine them.
*408 The order should be affirmed, with costs.
All concur; Folger, J., in result.
Order affirmed.